In re Fergus A. MALONE, Jr., James P. Malone, Sr., William E. Malone, Co-Partners Trading as Malone Realty Company, Debtors.

TEAMSTERS PENSION TRUST FUND OF PHILADELPHIA AND VICINITY and Charles J. Schaffer, Jr., Trustee Ad Litem, Plaintiffs,

v.

MALONE REALTY COMPANY, Fergus A. Malone, Jr., James P. Malone, Sr. and William E. Malone, Defendants.

Bankruptcy No. 82–04582G.
Adv. No. 86–0865G.

United States Bankruptcy Court, E.D. Pennsylvania.

May 26, 1987.
As Amended May 28, 1987.

---

Sanford G. Rosenthal, Sagot & Jennings, Philadelphia, Pa., for plaintiffs, Teamsters Pension Trust Fund of Philadelphia and Vicinity and Charles J. Schaffer, Jr., Trustee Ad Litem.

Jack M. Bernard, Philadelphia, Pa., for debtors/defendants, Malone Realty Co., Fergus A. Malone, Jr., James P. Malone, Sr. and William E. Malone.

## OPINION

BRUCE I. FOX, Bankruptcy Judge:

Presently before me are two matters for resolution. First, there is a civil action brought by the Teamsters Pension Trust Fund of Philadelphia and Vicinity ("the Fund") and its trustee ad litem against: (1) Malone Realty Company ("Malone Realty"), a partnership which is the chapter 11 debtor herein and (2) the three individuals who formed the debtor partnership. The Fund seeks a money judgment against the defendants in the amount of $431,758.51 for "withdrawal liability" under the Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. §§ 1381–1453 ("MPPAA"). The civil action was initiated in the district court and referred by the district court to this court.

The second matter is an objection to a proof of claim. Prior to filing the civil action, the Fund filed a proof of claim in the debtor's chapter 11 case, seeking allowance of its claim for withdrawal liability as an administrative expense pursuant to 11 U.S.C. §§ 503(b)(1), 507(a)(1). The debtor eventually objected to the Fund's claim, denying that it is an employer subject to liability under the MPPAA.

The parties have submitted a stipulated record and have filed cross motions for summary judgment. They agree that the record and motions may be the basis for deciding both the civil action and the objection to the proof of claim.

As the foregoing suggests, these matters have a peculiar procedural history (which will be unraveled below), and present a number of jurisdictional and substantive issues. For the reasons set out in this opinion, I conclude that: (1) while it is appropriate to adjudicate the objection to the proof of claim, the bankruptcy court lacks jurisdiction over the claims raised by the Fund against all the defendants (including the debtor) in the civil action; (2) the Fund's claim for withdrawal liability is a general unsecured claim and is not an administrative expense under 11 U.S.C. §§ 503(b)(1), 507(a)(1); and (3) since there is no likelihood of any distribution in this case to general unsecured claimants, it is unnecessary to decide, at this time, whether the debtor has any withdrawal liability as an employer under the MPPAA.

### I.

The debtor, Malone Realty, is a partnership formed by Fergus A. Malone, James

P. Malone, Sr. and William E. Malone. The same three individuals own all of the voting stock of a corporation named Malone Transportation, Inc ("Malone Transportation"). Prior to March 31, 1982, Malone Realty owned the real estate on which Malone Transportation conducted its business and leased the property to Malone Transportation. Malone Transportation was a contributing employer which had an obligation to contribute to the Fund on or after September 26, 1980. There is no dispute that Malone Transportation ceased operations on or about March 31, 1982, thereby incurring withdrawal liability under the MPPAA. *See generally In re T.D.M.A., Inc.*, 66 B.R. 992 (Bankr.E.D.Pa.1986): *In re Great Northeastern Lumber & Millwork Corp.*, 64 B.R. 426 (Bankr.E.D.Pa. 1986).

On September 27, 1982, Malone Realty filed a voluntary petition in bankruptcy under chapter 11.[1] A notice scheduling a meeting of creditors was mailed by the clerk on December 9, 1982. The notice set no deadline for filing proofs of claim. On February 10, 1983, the Fund filed a proof of claim in the amount of $16,513.84 as a priority claim for unpaid pension contributions and "any applicable withdrawal liability ... claimed as priority to the fullest extent allowed by law."[2] On August 9, 1984, the Fund filed another proof, limited to the withdrawal liability only, in the amount of $431,758.51. The August 9, 1984 proof of claim asserted priority under 11 U.S.C. § 507(a)(1).[3] The Fund's basic theory for Malone Realty's liability is that Malone Transportation's withdrawal liability extends to the debtor because: (1) under the MPPAA, it is the "employer" which has

withdrawal liability; (2) the term "employer" includes all "trades or business" (whether incorporated or not) which are under common control, *see* 29 U.S.C. §§ 1301(b), 1381(a); (3) Malone Realty and Malone Transportation were trades or business under common control.

A hearing on the debtor's disclosure statement was held on August 13, 1984. The court considered and rejected an objection by the Fund in which it contended that the disclosure statement should provide notice to other creditors of the Fund's large withdrawal liability claim. On October 30, 1984, the court entered an order confirming the debtor's chapter 11 plan. The Fund did not file any objections to confirmation of the plan; nor did it appeal the order of confirmation.

The chapter 11 plan itself was very simple. By the date of confirmation, all of the debtor's assets had already been liquidated, with prior court approval, and the proceeds were being held in interest bearing bank accounts.[4] The plan proposed to distribute the proceeds to (1) secured creditors, (2) priority creditors under 11 U.S.C. § 507(a)(3), (4); (3) governmental units with tax claims under 11 U.S.C. § 507(a)(6); and (4) general unsecured creditors. The disclosure statement noted that the debtor anticipated that it would have sufficient monies to pay the Fund for unpaid pension contributions and approximately ninety percent (90%) of the federal, state and local tax claims.[5] Therefore, no funds would be available for general unsecured claims.

After confirmation of the plan, there was no activity on the bankruptcy court docket for over two years.[6] On January 21, 1986,

---

**1.** Malone Transportation filed a voluntary bankruptcy petition under chapter 7 in May 1982.

**2.** The debtor has not disputed its liability for the unpaid pension contributions (as opposed to withdrawal liability). The plan of reorganization proposes to pay the claim in full.

**3.** The Fund's proof of claim also asserted priority under 11 U.S.C. § 507(a)(4). However, the Fund has since advised the court that it has withdrawn its claim of priority under section 507(a)(4).

**4.** According to the disclosure statement, Malone Realty's only assets were the real estate formerly leased to Malone Transportation and certain insurance proceeds resulting from two fire damage loss claims.

**5.** In reaching that conclusion, the debtor implicitly assumed that the Fund's claim for withdrawal liability would either be disallowed entirely, or at least denied priority status.

**6.** At a recent status conference held in the Malone Realty chapter 11 case itself, the debtor's counsel correctly noted that the debtor needed

the Fund initiated a civil action against Malone Realty and its three individual partners seeking a money judgment for the withdrawal liability, plus interest, costs and attorney's fees in the district court. An answer was filed on March 25, 1986. One of the defenses raised was labelled as a "motion to remand." On April 19, 1986, the district court referred the civil action to this court. After the referral, Malone Transportation filed an objection to the Fund's withdrawal liability proof of claim, incorporating by reference the defenses raised in the answer to the district court complaint.[7] The parties then submitted the stipulated record and filed their cross motions for summary judgment.

## II.

I turn first to the question whether the bankruptcy court has jurisdiction over the claims raised in the civil action.

The bankruptcy court is a court of limited jurisdiction. Its jurisdiction is derived from 28 U.S.C. § 1334(b), which provides for district court jurisdiction of all proceedings arising under, arising in or related to a case under the Bankruptcy Code, and 28 U.S.C. § 157(a), which allows the district court to refer such proceedings to the bankruptcy court. In this district, the district court has exercised its power to refer bankruptcy cases to the bankruptcy court by standing order. See Raff v. Gordon, 58 B.R. 988, 991 n. 5 (E.D.Pa.1986).

Under this jurisdictional scheme, there are three types of legal controversies which might conceivably arise in the bankruptcy court; (1) core proceedings, which may be heard and resolved by the bankruptcy court, see 28 U.S.C. § 157(b)(1); (2) noncore, related proceedings, which the bankruptcy court may hear and submit proposed findings of fact and conclusions to the district court, see 28 U.S.C. § 157(c)(1); and (3) noncore, unrelated proceedings, over which the bankruptcy court lacks any jurisdiction. In re Athos Steel and Aluminum Inc., 71 B.R. 525 (Bankr.E.D.Pa. 1987); In re Bowling Green Truss, Inc., 53 B.R. 391 (Bankr.W.D.Ky.1985); accord, In re Globe Parcel Service, Inc., 71 B.R. 323 (E.D.Pa.1987).

In In re Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir.1984), the Third Circuit enunciated the following test for determining whether an action is a related proceeding:

An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate.

In this case, the Fund seeks a money judgment against the individual partners and the debtor for MPPAA withdrawal liability. The claims as to the individuals and the debtor-partnership require separate analysis.

### A. The Civil Action Claims Against Individual Defendants

The Fund's theory of liability against the individual defendants is based on the legal

---

to await the outcome of the proof of claim litigation with the Fund before it could distribute the funds on account. Counsel did not explain why the withdrawal liability dispute was not more promptly presented to this court for resolution.

7. The answer denied that Malone Realty and Malone Transportation were a single employer under the MPPAA. The answer also raised, and the defendants continue to assert, the defense of res judicata. First, the defendants refer to an adversary proceeding which is reported as In re Malone, 39 B.R. 81 (Bankr.E.D.Pa.1984), and argue that the court there conclusively determined that the Fund's claim was limited to $30,500.59. However, a fair reading of that decision reveals that the court's holding was merely that the debtor was not entitled to set off previous excess payments made to the Fund against the Fund's proof of claim. Moreover, the proof of claim involved in that proceeding was for unpaid pension contributions, not withdrawal liability. Second, the defendants contend that this court's denial of the Fund's objection to the disclosure statement bars this claim. However, in explaining his decision, Chief Judge Goldhaber expressly observed that the withdrawal liability claim was not before him and that the only issue was whether the disclosure statement should be approved. In these circumstances, there is no basis for claim or issue preclusion. See Fannie v. Chamberlain Manufacturing Corp., 445 F.Supp. 65 (W.D.Pa. 1977).

principle that general partners of a partnership are individually liable for partnership debts. *See* Fund's Reply Memorandum at 4. This claim, by a creditor of the debtor against three non-debtors, cannot be adjudicated in the bankruptcy court unless its outcome will affect the debtor or the administration of the estate. *In re Pacor, Inc.*

■ I conclude that the claim against the individual defendants is not related to the Malone Realty bankruptcy and therefore, I lack jurisdiction to resolve it. From a straightforward, practical standpoint, a determination of liability on the part of the individual defendants will not have any impact on this bankruptcy case. This debtor never sought to remain in business. It merely employed chapter 11 as the legal vehicle for the liquidation of its assets. By the time the civil action was filed in the district court, the plan of reorganization had long been confirmed and the proceeds derived from the liquidation were being held on account. The only further case administration necessary involved the adjudication of any objections to proofs of claim and the actual distribution of the funds.

I recognize that there may be cases where a prompt adjudication of claims against non-debtors might affect the distribution of estate assets and therefore would be related to the bankruptcy case. For example, a creditor's ability to collect a debt against a debtor's co-obligor may reduce its claim against estate assets. *Compare In re Bowling Green Truss, Inc.*, 53 B.R. at 394 (claim against non-debtor held related because, if successful, it would reduce the amount of a secured claim against the estate) *with Matter of Xonics, Inc.*, 813 F.2d 127 (7th Cir.1987) (action by one creditor against another creditor not related to the bankruptcy where determination of the dispute would not affect distribution to other creditors under the plan of reorganization). However, this is not such a case.

As a rule, general partners are personally liable for partnership debts. At the same time, each partner has a right to have the partnership's property applied to the payment of the partnership debt. 28 *Pennsylvania Law Encyclopedia,* Partnerships § 159 (1960). Ordinarily, these principles would yield the conclusion that an action against a general partner is related to a partnership bankruptcy. *Cf. Pacor, Inc. v. Higgins,* 743 F.2d 984 (3d Cir.1984) (action against non-debtor is related where debtor is obligated to indemnify the non-debtor); *In re Athos Steel and Aluminum, Inc.* (same). In many cases, this question of "relatedness" arises early in the case, when the debtor's prospects for rehabilitation and the extent of the expected distribution to creditors may still be unsettled. In such circumstances, a finding that an action against a general partner is related to a partnership bankruptcy may well be appropriate.

In this case, however, the partnership assets have already been fully liquidated and there is a certainty that the estate assets will not be sufficient to pay any claims the general partners may assert against the estate (in the event they are found liable to the Fund).[8] In essence, there is no partnership property to be applied to the payment of the debt. In these narrow circumstances, it is appropriate to conclude that the Fund's action will not have any impact on the handling and administration of the bankruptcy estate. *Cf. Culbreth v. Simone,* 511 F.Supp. 906, 911 (E.D.Pa.1981) (when there is a legal certainty that plaintiff's claim is less than the jurisdictional amount, case may be dismissed for lack of jurisdiction); *Leu v. Leu,* 481 F.Supp. 899, 901 (W.D.Pa.1979) (same); *Dawes v. Philadelphia Gas Commission,* 421 F.Supp. 806, 818 n. 12 (E.D.Pa.1976) (same); 1 *Moore's Federal Practice* ¶ 0.92[1] (2d ed. 1986) (same).

In the absence of any tangible effect on the bankruptcy case, bankruptcy courts have regularly concluded that they lack jurisdiction to resolve claims by non-debtors against other non-debtors. In *In re*

---

8. I need not decide whether any claim the individual partners may have against the partnership are pre-petition or post-petition claims.

*See generally Matter of M. Frenville Co.,* 744 F.2d 332 (3d Cir.1984).

*Haug,* 19 B.R. 223 (Bankr.D.Ore.1982), a case procedurally comparable to this case, a creditor of the debtor filed a complaint seeking a determination of nondischargeability of its debt against the debtor and a money judgment against three co-defendants who participated in the underlying allegedly fraudulent scheme. The bankruptcy court's dismissal of the claim against the non-debtors for lack of jurisdiction was cited with approval by the Third Circuit in *Pacor,* 743 F.2d at 994. *Accord, Wayne Film Systems Corp v. Film Recovery Systems Corp.,* 64 B.R. 45 (N.D.Ill.1986); *In re Denalco Corp.,* 57 B.R. 392 (N.D.Ill. 1986); *In re Osage Exploration Co.,* 39 B.R. 966 (Bankr.S.D.N.Y.1984).

I am aware that the Fund's claims against the debtor and the three non-debtors involve virtually identical issues of fact and law. However, judicial economy itself does not justify the exercise of bankruptcy court jurisdiction. *See In re Pacor, Inc.,* 743 F.2d at 994; *In re Diaconx Corp.,* 65 B.R. 139 (E.D.Pa.1986). Moreover, considerations of judicial economy are not applicable here. As explained below in Part III, I need not decide whether the debtor has MPPAA withdrawal liability. The district court will be able to decide that issue in the first instance. Thus, there will be no duplication of effort.

### B. *The Civil Action Claim Against the Debtor*

Analysis of the claim raised by the Fund against the debtor in the civil action is more complicated. Ordinarily, a creditor asserts its claims against a debtor by filing a proof of claim in the bankruptcy case itself, not by filing a civil action in another

court. *See* Bankr.Rule 3002, 3007; 11 U.S.C. § 362. In this case, the Fund decided that it was appropriate to sue the debtor in the district court. The Fund's legal theory for filing suit may be summarized as follows: (1) confirmation of the debtor's plan constituted a denial of discharge pursuant to 11 U.S.C. § 1141(d)(3) which, in turn, terminated the automatic stay pursuant to 11 U.S.C. § 362(c)(2)(C);[9] (2) the Fund anticipated little or no distribution on its withdrawal liability claim in the chapter 11 proceeding itself; (3) the Fund has a fiduciary duty to take all prudent measures to collect the debt which requires it to attempt to reduce its claim to a money judgment against both the debtor and the individual defendants. *See* Fund's Memorandum of Law at 7.

After the civil action was remanded here by the district court, the parties treated the Fund's civil action and the proof of claim as identical matters. However, there are fundamental differences between a proof of claim and a civil action. Consideration of these differences and the basic structure of the bankruptcy system lead me to conclude that this court lacks jurisdiction over the civil action brought against the debtor.

■ The Fund's ostensible rationale in initiating the civil action is that the withdrawal liability is a prepetition debt which was neither paid in full nor discharged in the chapter 11 proceeding.[10] The very purpose of denying a debtor a discharge or determining a particular debt non-dischargeable[11] is to allow creditors to exercise their non-bankruptcy remedies to collect the debt (after the termination of the automatic stay, *see* 11 U.S.C. § 362(c)). In

---

**9.** I do not pass on the propriety of the Fund's assertion that the confirmation of the plan terminated the automatic stay. Nor do I decide whether the confirmation of the plan itself stayed the Fund from filing suit against the debtor. *See* 11 U.S.C. § 1141(a) (the provisions of a confirmed plan "bind" a creditor regardless whether the creditor has accepted the plan or whether its claim is impaired).

**10.** In actuality, the Fund's real motivation appears to have been a desire to obtain a judgment against the individual defendants, who are more likely than the defunct partnership to acquire assets in the future which might satisfy

the alleged liability. The Fund sued the partnership primarily to establish the liability of the individual partners.

**11.** The bankruptcy court has exclusive jurisdiction to determine the issue of nondischargeability under 11 U.S.C. § 523(a)(2), (4) and (6). With respect to other debts which may be non-dischargeable under other code provisions, the bankruptcy court has concurrent jurisdiction with the appropriate local court on the dischargeability issue. 3 *Collier on Bankruptcy* ¶ 523.06[13] (15th ed. 1987).

many cases, a creditor holding a claim not discharged in the bankruptcy proceeding will attempt to collect the debt from non-exempt or non-administered assets after the bankruptcy case is over. In the absence of a relationship to the administration of the bankruptcy estate, it is not the bankruptcy court's role to serve as the collection forum; the mere fact that a defendant is or was a bankruptcy debtor does not give the bankruptcy court jurisdiction to resolve lawsuits to collect prepetition claims which were not discharged.

■ In this case, the Fund asserted a claim against the debtor's estate by filing a proof of claim. The proceeding to determine the validity of that proof of claim is a core matter, *see* 28 U.S.C. § 157(b)(2)(B), resolution of which is integral to the bankruptcy process. If the claim is allowed, the Fund may participate in any distribution of the debtor's assets administered in the bankruptcy case. The entry of a civil judgment against the debtor, is a different matter; it would give the Fund the power to execute against any assets the debtor might acquire post-petition. By its very nature, it cannot be related to the bankruptcy case because its function is to determine the Fund's legal rights against the debtor-entity which emerges from the bankruptcy case with respect to a pre-petition claim.

For these reasons, I conclude that the adjudication of the civil action will not have any effect on the administration of this bankruptcy case. Therefore, I will recommend that the district court withdraw its reference of the civil action in its entirety.

### III.

I next address the debtor's objection to the Fund's proof of claim. The debtor con-tests the claim on two grounds. First, it disputes whether it is an "employer" subject to any withdrawal liability under the MPPAA.[12] Second, even if there is a valid claim, the debtor contends that the claim is not entitled to administrative expense priority status under 11 U.S.C. §§ 503(b), 507(a)(1). A decision in the debtor's favor on the second ground would also preclude any distribution to the Fund for withdrawal liability since the assets of the estate are insufficient to make any payment to general unsecured claimants. Since I hold that withdrawal liability is not an administrative expense, there will be no distribution to the Fund in this case. Therefore, it is unnecessary to determine whether the Fund has a valid, general unsecured claim.[13] If the district court removes the reference of the civil action, as I have recommended, that issue may be determined by the district court in the first instance.

"Withdrawal liability was designed by Congress to ensure that multiemployer pension plans have adequate funds to pay employee pensions." *In re Pulaski Highway Express, Inc.*, 57 B.R. 502 (Bankr.M.D. Tenn.1986). The concept of withdrawal liability was concisely summarized in *Amalgamated Insurance Fund v. William B. Kessler, Inc.*, 55 B.R. 735, 737 (S.D.N.Y. 1985) as follows:

ERISA, enacted in 1974, establishes the basic policy employee pension plans should provide vested benefits to the employees. ERISA further requires employee pension plans to meet minimum standards of funding 29 U.S.C. § 1001(c). Past accumulations of unfunded vested liabilities must be brought up to date. The statute permits this to be done over time. ...

**12.** This issue requires a determination whether Malone Realty was a trade or business under common control with Malone Transportation, thereby making the two entities a single employer for purposes of the MPPAA. *See* 29 U.S.C. § 1301(b); *United Food and Commercial Workers v. Progressive Supermarkets*, 644 F.Supp. 633 (D.N.J.1986); *Pension Benefit Guaranty Corp. v. Center City Motors*, 609 F.Supp. 409 (S.D.Cal. 1984).

**13.** This is not to say that a bankruptcy court necessarily lacks the power to resolve an objection to a proof of claim where there may ultimately be no distribution to that claimant. I hold only that where, as here, there is a certainty that there will be no distribution and a virtually identical proceeding is pending in the district court, it is appropriate, as a matter of judicial economy and respect to the district court, to defer ruling on the objection to the claim and avoid rendering, what is in essence, an advisory opinion.

When a contributing employer withdraws from a group pension plan, this creates a problem regarding that employer's share of any unfunded vested liabilities. Prior to MPPAA such an employer was under no obligation to pay his share of the unfunded vested liability. MPPAA establishes the concept of "withdrawal liability." The statute imposes upon the withdrawing employer a liability for his share of the total unfunded vested liability of the pension plan to which he has been contributing. 29 U.S.C. § 1381 and § 1383(a). This share is fixed according to one of several methods provided in the statute. 29 U.S.C. § 1391.

*Accord, e.g., Trustees of Amalgamated Insurance Fund v. McFarlin's, Inc.,* 789 F.2d 98, 102–03 (2d Cir.1986); *Peick v. Pension Benefit Guaranty Corp.,* 539 F.Supp. 1025, 1033–34 (N.D.Ill.1982), *aff'd,* 724 F.2d 1247 (7th Cir.1983), *cert. denied,* 467 U.S. 1259, 104 S.Ct. 3554, 82 L.Ed.2d 855 (1984); *Matter of Gee & Missler Services, Inc.,* 62 B.R. 841 (Bankr.E.D.Mich.1986). In substance, withdrawal liability is "an obligation to ensure the payment of pension benefits which have previously accrued but are not payable until a future date." *In re Pulaski Highway Express, Inc.,* 57 B.R. at 507.

In a number of bankruptcy cases, the actual withdrawal from the pension plan, and the concomitant assessment of withdrawal liability, has taken place after the filing of the employer's bankruptcy petition. This sequence of events has given rise to claims by pension fund creditors that the withdrawal liability should be treated an administrative expense. Such claims have been uniformly rejected by the courts. *See In re Great Northeastern Lumber & Millwork Corp.,* 64 B.R. at 428 & authorities cited therein.

The rationale for these decisions was articulated by the Second Circuit:

> [W]ithdrawal liability is made to guarantee pension benefits already earned by those employees covered by the Plan. Were the employer not withdrawing from the plan, he would be obligated to continue making periodic contributions to the Fund after his withdrawal. The consideration supporting the withdrawal liability is, therefore, the same as that supporting the pensions themselves, the past labor of the employees covered by the Plan.

*Trustees of Amalgamated Insurance Fund v. McFarlin's,* 789 F.2d at 101–02. This analysis is buttressed by the manner of calculating the withdrawal liability. "Each of the MPPAA's four methods of establishing the amount of 'withdrawal liability' ... extrapolate[s] the employer's proportionate share of the plan's unfunded, vested benefits from such factors as the employer's past contributions to the plan and the portion of the plan's unfunded benefit obligations attributable to the employer's employees." *Id.* at 103. By comparison, administrative expenses in a chapter 11 proceeding are, most commonly, the costs of carrying on the debtor's business after the commencement of the bankruptcy case. They relate to activities undertaken post-petition such as the receipt of goods and services obtained by the debtor. *See Amalgamated Insurance Fund v. William B. Kessler, Inc.,* 55 B.R. at 739.

The main fallacy in the Fund's argument is that a debt is not an administrative expense simply because the right to payment arises after the filing of the bankruptcy petition. *Trustee's of Amalgamated Insurance Fund v. McFarlin's, Inc.,* 789 F.2d at 101. As one court reasoned:

> The liability may be unliquidated and the amount may be contingent upon withdrawal or whether the vested benefits are unfunded, but such uncertainties do not defeat the existence of pre-petition claims for benefits which accrued prior to withdrawal, which stem from pre-petition events and conduct and which were nonforfeitable and fully vested prior to filing. Termination of operations merely accelerates the obligation and permits the determination of its liquid amount.

*In re Pulaski Highway Express, Inc.,* 57 B.R. at 507.

I find the foregoing analysis persuasive. Therefore, I will sustain the debtor's objec-

tion to the Fund's proof of claim to the extent it seeks classification as an administrative expense.

An order and recommendation consistent with this opinion will be entered.

## ORDER

AND NOW, this 26 day of May, 1987, upon consideration of the motion for summary judgment filed by the claimant, the Teamsters Pension Trust Fund of Philadelphia and Vicinity ("the Fund") and its trustee ad litem, and the cross motion for summary judgment filed by the debtor, which were filed in Adv. No. 86–0865G and which have been incorporated by reference in the contested matter arising from the debtor's objection to the proof of claim filed by the Fund, it is ORDERED that:

1. The Fund's claim is disallowed under 11 U.S.C. § 507(a)(1).

2. No ruling will be made on the objection to the claim as a general unsecured claim until such time, if any, as it appears that there will be any distribution to holders of general unsecured claims.

## RECOMMENDATION

AND NOW, this 26 day of May, 1987, upon consideration of the plaintiffs' motion for summary judgment and the defendants' cross motion for summary judgment, it is hereby RECOMMENDED, for the reasons set forth in this court's opinion of this date, that the district court withdraw its reference of this adversary proceeding on the ground that the bankruptcy court lacks jurisdiction to adjudicate the claims therein.

The Deputy Clerk shall transmit the court's opinion of this date to the district court for consideration and entry of a final order or judgment in accordance with 28 U.S.C. § 157(c)(1).