TEAMSTERS PENSION TRUST FUND
OF PHILADELPHIA AND
VICINITY, et al.

v.

MALONE REALTY COMPANY, et al.

Civ. A. Nos. 86–361, 87–6417.

United States District Court,
E.D. Pennsylvania.

Jan. 27, 1988.

Thomas Jennings, Philadelphia, Pa., for Teamsters Pension Trust Fund.

Jack Bernard, Philadelphia, Pa., for debtor.

## MEMORANDUM AND ORDER

FULLAM, Chief Judge.

This case has returned to this court in accordance with my September 30, 1987 Order withdrawing an earlier reference to the Bankruptcy Court.

On January 21, 1986, plaintiffs filed a complaint in this court naming Malone Realty Company and its three individual partners as defendants. The lawsuit was predicated on the withdrawal liability provisions of the Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. §§ 1381–1453 ("MPPAA"). In light of the ongoing Chapter 11 proceedings involving Malone Realty Company ("Malone Realty") in which the Teamsters Pension Trust Fund of Philadelphia ("Fund") had already filed a proof of claim asserting this same withdrawal liability, I transferred the case to the Bankruptcy Court on April 19, 1986. Sometime thereafter, the parties filed cross-motions for summary judgment. Both sides agreed that these motions should be the basis for deciding both the civil action transferred from this court and the proof of claim, to which the debtor, Malone Realty, had objected.

The Bankruptcy Court disallowed the Fund's proof of claim, to the extent that the Fund sought administrative expense priority for that claim. Since the Bankruptcy Court saw little likelihood that there would ever be a distribution to holders of general unsecured claims in the Chapter 11 proceedings, the Court did not decide whether the Fund had a valid general unsecured claim against the debtor. *In re Malone*, 74 B.R. 315 (Bankr.E.D.Pa.1987).

Having reached this resolution of the proof-of-claim issue, the Bankruptcy Court concluded that it lacked jurisdiction over the civil action and recommended that the reference be withdrawn. *Id.* at 321. On September 30, 1987, I accepted that recommendation and restored the civil action to this court's docket.

Given the Bankruptcy Court's holding, and the withdrawal of the reference, I now have before me the parties' cross-motions for summary judgment in the civil action.[1] I find that there is no genuine issue of material fact and that plaintiffs are entitled to summary judgment as a matter of law.

## I

Plaintiffs contend that Malone Realty is responsible for the withdrawal liability of Malone Transportation, Inc. Malone Transportation was a contributing employer to the Fund. In 1982, Malone Transportation ceased operations, filed a bankruptcy petition, and terminated its contributions to the Fund. As a result, Malone Transportation incurred withdrawal liability under 29 U.S.C. §§ 1381, 1399. The Fund Administrator notified Malone Transportation of this withdrawal liability by letter dated March 15, 1983. By letter of October 14, 1985, counsel for the Fund notified Malone Realty and its individual partners that Malone Transportation's withdrawal liability extended to Malone Realty and its three individual partners. As stated in that letter and reiterated in its motion for summary judgment, the Fund regards Malone Realty and Malone Transportation as trades or businesses under common control, a "single employer" within the meaning of ERISA, 29 U.S.C. §§ 1002(37)(B), 1301(b)(1) (1985). This is significant because withdrawal liability of a contributing employer extends to trades or businesses under common control. 29 U.S.C. § 1301(b)(1). *See, e.g., IUE AFL–CIO Pension Fund v. Barker & Williamson*, 788 F.2d 118 (3d Cir.1986).

---

1. Plaintiffs have filed a summary judgment motion in this court, a motion that basically reiterates the motion filed in the Bankruptcy Court.

The three equal partners of Malone Realty, Fergus A. Malone, James P. Malone, Sr., and William E. Malone, own all of the voting stock of the corporation known as Malone Transportation, Inc. When Malone Transportation entered Chapter 7 liquidation proceedings in May 1982, Malone Realty's sole asset was the real estate which it had leased to Malone Transportation prior to March 31, 1982.

As noted by the Bankruptcy Court, it is unlikely that the Fund will participate in the distribution of Malone Realty's fully liquidated assets [2] as part of the underlying bankruptcy proceedings. The real targets of plaintiffs' civil action are the individual partners of Malone Realty, none of whom have filed bankruptcy petitions, and who, according to plaintiffs, all share Malone Realty's liability because they are general partners liable for debts of the partnership.

## II.

Before considering the heart of plaintiffs' motion for summary judgment, plaintiffs' contention that Malone Realty and Malone Transportation were trades or businesses under common control within the meaning of the statute, I will consider two preliminary issues.

█ The first is plaintiffs' view, which defendants have not contested in either the Bankruptcy Court or this court, that this civil action does not run up against the automatic stay that arose when Malone Realty filed its Chapter 11 petition. See 11 U.S.C. § 362. 11 U.S.C. § 362(c)(2)(C) states that the automatic stay continues, in a Chapter 11 case, until "the time a discharge is granted or denied." Plaintiffs point to the confirmation of the debtor's Chapter 11 plan on October 30, 1984 as the moment when a discharge was denied and therefore as the moment when the automatic stay dissolved.

The language of 11 U.S.C. § 1141(d)(3) supports plaintiffs' interpretation. Under § 1141(d)(3), a corporate or partnership debtor that is both liquidating and discontinuing its business does not receive a discharge when its plan is confirmed. See, e.g., In re Novelty & Toy Co., Inc., 22 B.R. 77 (Bankr.Ala.1982); 5 Collier on Bankruptcy, ¶ 1141.01[4][a] (15th ed. 1987). Malone Realty's Chapter 11 plan was a plan of liquidation, not rehabilitation. Thus, even if the automatic stay would have barred this civil action before the confirmation of debtor's Chapter 11 plan, confirmation of the plan dissolved the automatic stay because the discharge that ordinarily accompanies confirmation did not occur. It follows that a discharge was "denied," within the meaning of 11 U.S.C. § 362(c)(2)(C), no later than the moment of confirmation. 11 U.S.C. §§ 1141(a), 1141(d)(1), 1141(d)(3).

The second preliminary matter is defendants' res judicata defense. Defendants argue that Malone Realty's liability to the Fund has already been fully litigated in the Bankruptcy Court on a previous occasion, and that because of this earlier litigation, the issue of Malone Realty's withdrawal liability is res judicata.[3] The Bankruptcy Court rejected this defense after concluding that the adversary proceeding to which the defendants referred had not conclusively determined the debtor's liability to the Fund. In re Malone, 74 B.R. at 318, n. 7. I agree with the Bankruptcy Court.

## III.

█ Defendants contend that Malone Realty was not a trade or business under

---

**2.** At the time the plan was confirmed, in addition to the real estate which it leased to Malone Transportation, the partnership's assets consisted of certain insurance proceeds. See 74 B.R. at 317, n. 4.

**3.** In their response to the plaintiffs' summary judgment motion in the Bankruptcy Court, defendants argued that there were two grounds for a finding of res judicata—(1) the adversary proceeding reported as In re Malone, 39 B.R. 81 (Bankr.E.D.Pa.1984) involving debtor's claims of set-off, and (2) the Bankruptcy Court's denial of the Fund's objection to the disclosure statement. Defendants have made no reference to the latter Bankruptcy Court ruling in their res judicata argument in this court, which suggests that defendants do not contest the Bankruptcy Court's rejection of this part of their res judicata defense. See In re Malone, 74 B.R. at 318, n. 7. In any event, the Bankruptcy Court's analysis on this point seems sound. See id.

common control with Malone Transportation because Malone Realty never was a trade or business. Malone Realty was formed as an "informal entity" that would own, lease, and pay taxes on one piece of real estate. According to defendants, the income which the partnership earned from its lease to Malone Transportation was "passive income, i.e., investment income ... not trade or business income." Ans. at ¶ 7.

Other courts have concluded that a partnership or proprietorship that does no more than lease real estate (even on a net lease basis) constitutes a trade or business within the meaning of 29 U.S.C. § 1301(b)(1).[4] *United Food and Commercial Workers v. Progressive Supermarkets,* 644 F.Supp. 633 (D.N.J.1986); *Pension Benefit Guaranty Corp. v. Center City Motors,* 609 F.Supp. 409 (S.D.Cal.1984). As these courts have observed, the meaning of "trade or business" is slippery. Although 29 U.S.C. § 1301(b)(1) specifies that the regulations promulgated under § 414(c) of the Internal Revenue Code shall be a guide in interpreting the scope of § 1301(b)(1), the Treasury regulations give no definition of "trade or business". Indeed, at no place in the Internal Revenue Code or the Treasury regulations is the term defined; moreover, no authoritative, single meaning has evolved out of the extensive judicial interpretation. *Groetzinger v. C.I.R.,* 771 F.2d 269, 271 (7th Cir.1985).

Under these circumstances, it makes sense to examine the reasons that Congress extended the withdrawal liability of contributing employers to trades or businesses under common control. Without the "single employer" provisions, a contributing employer could insulate virtually all of its assets from ERISA liability simply by vesting ownership of those assets in other entities and then having those entities turn around and lease the assets back to the underlying business. *See Center City Mo-*

*tors,* 609 F.Supp. at 412. Therefore, defendants' contention that Malone Realty was a passive investment instrument cuts in more than one direction. By emphasizing the "passivity" of Malone Realty, and thus its lack of an existence beyond its symbiotic relationship with Malone Transportation, defendants underscore the fact that Malone Realty owned real estate that otherwise would have been owned by the primary business entity, Malone Transportation. Congress intended to prevent employers from limiting their ERISA exposure by fractionalizing their assets in precisely this way.

In their supplemental memorandum filed in the Bankruptcy Court, the defendants argued that even if Malone Realty could be saddled with Malone Transportation's withdrawal liability, this liability could not be extended to the partners individually. But defendants have overlooked several decisions to the contrary. *United Food; Connors v. Calvert Development Co.,* 622 F.Supp. 877 (D.D.C.1985) (individual partners and partnership that was under common control with defaulting corporate employer jointly and severally liable for payment of withdrawal liability); *see Teamsters Pension Trust Fund v. H.F. Johnson, Inc.,* 830 F.2d 1009 (9th Cir.1987) (principals in a joint venture personally liable for joint venture's withdrawal liability).

I find that Malone Realty was a trade or business under common control with Malone Transportation within the meaning of ERISA. Accordingly, Malone Transportation's withdrawal liability extends not only to Malone Realty but also to its individual partners, who are liable for debts of the partnership.

## IV.

■ In their summary judgment motion filed in this court, plaintiffs have laid out an accounting of defendants' withdrawal liability that includes interest, costs, and

---

4. Defendants argue that the absence of a net lease arrangement between Malone Realty and Malone Transportation should make it easier for this court to conclude that Malone Realty was not a trade or business within the meaning of ERISA and the MPPAA. However, the oppo-

site is true. The fact that Malone Realty did not through a net lease arrangement make its lessee, Malone Transportation, responsible for tax and other payments on the property only enhances Malone Realty's status as a trade or business entity.

attorneys' fees. Although I agree with most of the plaintiffs' figures, I reject plaintiffs' approach toward prejudgment interest. I see no reason not to apply the published regulations in calculating a proper award of prejudgment interest.

 Defendants' failure to request review of the Fund's withdrawal liability assessment or to seek arbitration of that assessment made the Fund's assessment and payment schedule final. 29 U.S.C. § 1401(b)(1). Furthermore, since the defendants have made no payments even after having been notified of their failure to pay, the Fund properly declared a default, which thereby entitled the Fund to accelerate the defendants' entire withdrawal liability. 29 U.S.C. § 1399(c)(5). Finally, plaintiffs are entitled to prejudgment interest as provided for in 29 C.F.R. § 2644.1 *et seq.*, 29 U.S.C. § 1399(c)(6), and to costs and attorneys' fees as provided for in 29 U.S.C. § 1451(e).

An Order follows.

### ORDER

AND NOW, this 27th day of January, 1988, upon consideration of plaintiffs' and defendants' cross-motions for summary judgment, it is ORDERED that plaintiffs' motion is GRANTED and defendants' motion is DENIED. Counsel are directed to submit for court approval, and within thirty (30) days, a judgment in accordance with the accompanying Memorandum.